Hillsborough
No. 84-518

DOROTHY LAVOIE

v.

LEE A. HOLLINRACKE

April 9, 1986

*Moquin & Daley P.A.*, of Manchester (*Elizabeth R. Jones* and *Edmund P. Daley* on the brief, and *Richard C. Moquin* orally), for the plaintiff.

*Wadleigh, Starr, Peters, Dunn & Chiesa*, of Manchester (*Robert L. Chiesa & a.* on the brief, and *Mr. Chiesa* orally), for the defendant.

BATCHELDER, J. In this case we must decide whether the trial court erred in apportioning damages between the two defendants named in the suit, when the plaintiff had settled with one of the defendants before the jury rendered its verdict. We reverse.

On April 24, 1981, Dorothy Lavoie was standing at the corner of Lake Avenue and Beech Street in Manchester, waiting to cross the

street. A vehicle operated by Lee Hollinracke was proceeding westerly on Lake Avenue, and a vehicle operated by James DiPietro was proceeding southerly on Beech Street. The vehicles collided at the intersection, and the DiPietro vehicle struck the plaintiff.

As a result of the accident, the plaintiff sued both Hollinracke and DiPietro in negligence. Neither defendant pleaded or alleged any comparative fault on the part of the plaintiff. Hollinracke carried liability insurance, but DiPietro did not and for all practical purposes was a judgment-proof defendant.

On numerous occasions, both prior to and during the July 1984 trial, the Superior Court (*Flynn*, J.) advised the parties that any liability assessed against the defendants would be apportioned if DiPietro remained a defendant in the action. At the trial's conclusion the court, in accordance with customary practice, submitted the case to the jury on a four-question special verdict blank that required the jury to state whether either of the defendants was at fault and, if so, by what percentage of the total. The last question inquired as to the plaintiff's total damages.

The jury commenced deliberations at 12:45 p.m. on July 27, 1984. At some time prior to 6:00 p.m., the jury submitted the following question to the court: "What would happen if we have a hung jury?" The lawyers were called into chambers and advised of the pending jury question. At this conference the plaintiff's lawyer advised the court that the plaintiff had reached a settlement with defendant DiPietro.

The court responded to the query, and the case was resubmitted to the jury for further deliberations. Although the verdict blank in the hands of the jury contained the names of two defendants, there was only one defendant remaining in the case by reason of the DiPietro settlement. The jury returned a verdict for the plaintiff in the amount of $260,000 and apportioned damages equally "between the parties [the jury] found to be responsible." The trial court then entered the following judgment: "Based on the findings of the jury, there shall be a verdict for the plaintiff against James M. DiPietro for $130,000 and for the plaintiff against Lee A. Hollinracke for $130,000. *See Mihoy v. Proulx*, 113 N.H. 698; *Simonsen v. Barlo Plastics Co., Inc.*, 551 F.2d 469."

At a September 18, 1984 post-trial motions hearing, Justice Flynn recalled the discussion that occurred in chambers before he responded to the jury question.

> "[W]hen I had everybody in my chambers, Attorney Moquin indicated to me that he had settled with DiPietro,

and I . . . assumed at that time that Attorney Chiesa was also so advised, [but] from what I understand, he was not.

Now, when Attorney Moquin asked me if I wanted to know about the settlement, I believe I indicated that I did not, and the reason I said I did not . . . was because [I had to] answer [the jury's] question about a hung jury. I didn't think it would be appropriate at that time to tell them. there was a settlement. If we were about to be concerned about a hung jury, I figured the settlement could be handled after the verdict of the Jury, and I was more concerned about what would be said to them concerning the hung jury question."

Apparently, the court reasoned that it would risk confusing the jury if it informed the jury of the settlement between the plaintiff and DiPietro.

The plaintiff filed post-trial motions to amend the *ad damnum* and to amend the verdict and enter judgment forthwith. Defendant Hollinracke moved for an order of remittitur and to set aside the verdict. The court denied all motions, and the plaintiff appealed.

While the appeal was pending, the plaintiff filed a motion in this court to compel payment of uncontested proceeds, claiming entitlement to $100,000 in proceeds from the defendant's insurer, plus interest. She argued that since the defendant had neither appealed the trial court's denial of his post-trial motions nor properly contested the DiPietro settlement, her appeal could result only in a $130,000 or $259,000 award, in either case more than the defendant's insurance coverage. The plaintiff's motion was granted.

The principal issue to be resolved is the amount of money to which the plaintiff is entitled: $260,000 less the amount of DiPietro settlement ($1,000) and less the amount of any insurance proceeds already received; $250,000 (the original *ad damnum* amount) less the DiPietro settlement and any insurance proceeds already received; or $130,000 (the amount of the verdict apportioned by the court against Hollinracke). For the reasons that follow, we hold that the plaintiff is entitled to a verdict against Hollinracke in the amount of $260,000 less the amount of the DiPietro settlement and any insurance proceeds already received.

We first consider the defendant's claim that the DiPietro settlement was not made in good faith and was therefore invalid. The good faith issue was raised in the defendant's motion to set aside the verdict:

"12. Counsel for Lee Hollinracke and the jury should have been advised of this purported settlement prior to

the time that the jury returned its verdict and the failure to so advise was greatly prejudicial to the defendant Lee Hollinracke.

13. The defendant Lee Hollinracke also disputes that said settlement between plaintiff and James DiPietro was entered in good faith and valid."

The defendant did not appeal the denial of this motion, nor did he follow the trial judge's recommendation that he file pleadings with the court requesting an evidentiary hearing on the good faith issue. Since the defendant did not pursue the matter, he has waived his right to challenge the settlement on appeal. *See Logic Assoc's, Inc. v. Time Share Corp.*, 124 N.H. 565, 571, 474 A.2d 1006, 1009–10 (1984).

Although the good faith issue has not been preserved, we note that given DiPietro's dire financial position, lack of insurance, and threatened bankruptcy, the $1,000 settlement does not appear to be insubstantial. On the record before us it would have been difficult to prove bad faith in the settlement.

Moreover, in a case such as this, a plaintiff sues multiple tortfeasors for several reasons. By suing DiPietro, the plaintiff avoided the possibility of having Hollinracke blame a potentially absent tortfeasor (DiPietro) for the accident, and, during her case in chief, forced DiPietro to account for his conduct at the accident scene. She also gained the advantage of the right to cross-examine DiPietro because of his status as a party. These tactical decisions, as well as any decision regarding the timing and amount of a settlement, are the type of strategic considerations involved in any litigation, and are presumed to be legitimate unless timely challenged and proven otherwise.

We now consider the issues of comparative negligence and damages apportionment. The plaintiff advances two arguments relating to comparative negligence. First, she contends that the comparative negligence statute does not apply when a non-negligent plaintiff releases one of two co-defendants pursuant to a good faith settlement prior to the announcement of the verdict. Second, she contends that the comparative negligence statute does not apply when the plaintiff is not negligent. A finding in favor of the plaintiff's second argument—that RSA 507:7-a applies only if the plaintiff is negligent—obviates the need to address the first.

The comparative negligence statute, RSA 507:7-a, states:

"Contributory negligence shall not bar recovery in an action by any plaintiff, or his legal representative, to recover damages for negligence resulting in death, personal injury, or property damage, if such negligence was not

greater than the causal negligence of the defendant, but the damages awarded shall be diminished, by general verdict, in proportion to the amount of negligence attributed to the plaintiff; provided that where recovery is allowed against more than one defendant, each such defendant shall be liable for that proportion of the total dollar amount awarded as damages in the ratio of the amount of his causal negligence to the amount of causal negligence attributed to all defendants against whom recovery is allowed. The burden of proof as to the existence or amount of causal negligence alleged to be attributable to a party shall rest upon the party making such allegation."

 The comparative negligence statute replaced the common law doctrine that contributory negligence was a complete bar to the recovery of damages. The statute begins with the words "[c]ontributory negligence shall not bar recovery in an action by any plaintiff," and we think it is clear that the provisions of the statute are premised on the existence of plaintiff's negligence. As we stated in *Hurley v. Public Service Co. of N.H.*, 123 N.H. 750, 756, 465 A.2d 1217, 1221 (1983): "The concept of comparative negligence was enacted . . . in an effort to allocate more equitably the responsibility for injuries due to negligent conduct on the part of parties on both sides of a lawsuit."

The key words from Hurley are "negligent conduct on the part of parties on both sides of [the] lawsuit." The applicability of the doctrine of comparative negligence is triggered by a plaintiff's negligence. Where there is no plaintiff's negligence, there is no contributory negligence and thus an absence of negligence on "both sides of the lawsuit." *See* Prosser, *Comparative Negligence*, 41 Calif. L. Rev. 1 n.2 (1953) ("'Comparative negligence' properly refers only to a comparison of the fault of the plaintiff with that of the defendant").

 In our view, the statute clearly provides that comparative negligence applies only when the plaintiff is negligent and the plaintiff's negligence is not greater than that of the defendant. *See* W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser and Keeton on the Law of Torts 473 (5th ed. 1984).

 In addition to allocating liability between plaintiffs and defendants, the comparative negligence statute apportions damages between defendants. When a plaintiff is negligent and there are two or more defendants who together are also at least equally negligent, the damages awarded are apportioned on the basis of each defendant's causal negligence. RSA 507:7-a. However, since the compara-

tive negligence statute does not apply in this case, there is no statutory basis for apportionment, and the common law rule of joint and several liability applies because there are joint tort-feasors. *See Mihoy v. Proulx*, 113 N.H. 698, 700, 313 A.2d 723, 724 (1973); *Simonsen v. Barlo Plastics Co., Inc.*, 551 F.2d 469, 472 (1st Cir. 1977). The DiPietro settlement left only one actual defendant. Thus, the defendant is severally liable for the entire damages award, minus the allowable credit and any insurance proceeds already received.

In addressing the applicability of the comparative negligence statute, both parties rely on *Mihoy* and *Simonsen*. In *Mihoy*, we held that a pre-trial covenant not to sue released one of the defendants and shielded that defendant from later being impleaded to contribute a share of the damages award. Because there was no allegation of plaintiff's negligence, the applicability of the comparative negligence statute was not decided by this court. Therefore, *Mihoy* is not determinative.

In *Simonsen*, the First Circuit was faced with a configuration of facts similar to those in the instant case. The court stated:

> "The question thus comes down to whether a settlement with a co-defendant entered into just before announcement of the verdict operates to deprive the remaining defendant of the right to an apportionment of damages according to fault. We think the reasoning of *Mihoy* compels an affirmative answer, assuming the settlement was in good faith."

*Simonsen*, 551 F.2d at 473. Earlier in that decision the court stated that "the assumptions which underlay *Mihoy* support the view that the assessment of comparative fault as between *actual* defendants is in order even if the plaintiff is not negligent." *Id.* at 472–73. The court indicated, however, that the issue was "academic" because the settlement left only one actual defendant.

■ We agree with the result of *Simonsen*, but differ with the view that the court may assess the comparative fault of the defendants absent negligence on the part of the plaintiff. The comparative negligence statute does not apply when the plaintiff is not negligent. Therefore, in a case such as this, where one of two co-defendants settles with a non-negligent plaintiff before the jury renders its verdict, the remaining defendant is not entitled to an apportionment of liability under that statute.

■ We next turn to the trial court's denial of the plaintiff's post-trial motion to increase the *ad damnum* from $250,000 in order to conform the *ad damnum* to the amount of the verdict. The stand-

ard to be applied by the trial court in ruling on a motion to increase the *ad damnum*, even after a verdict, is a liberal one, but it is not without some restrictions. *Valliere v. Filfalt*, 110 N.H. 331, 333–34, 266 A.2d 843, 845 (1970); RSA 514:9. The inquiry under *Valliere* is whether the rights of the defendant may be prejudiced by an increase in the *ad damnum* after the verdict is returned. In this case the defendant's rights were not prejudiced. He had a full and fair opportunity to litigate the liability and damages issues, and the increase would not increase his liability in excess of insurance so substantially as to suggest that he might have obtained separate personal counsel if he had faced liability in that amount. In view of the fact that damages were improperly apportioned, the motion should have been granted.

Since the common law rule of several liability governed, the plaintiff's motion to amend the verdict and enter judgment should have been granted. Thus, the defendant is liable for the entire damages award, minus the amount of any insurance proceeds already received and the credit required by RSA 507:7-b (the amount of the consideration paid for the settlement or release).

The facts of this case present one final issue: whether the trial judge should have informed the jury of the pre-verdict settlement. This is a question of first impression in this jurisdiction, and we address it in order to provide guidance to the trial court in future cases. Other courts which have considered the question have followed either the "court rule," *i.e.*, the jury should not be informed of the existence or amount of such a settlement, or the "jury rule," which permits disclosure of the existence and amount of such settlements to the jury for a calculation of the remaining defendant's liability. *See* Annot., 94 A.L.R.2d 352, 360, 374–75 (1964).

■ The major reason advanced by jurisdictions following the "court rule" is that the danger of confusion and prejudice on the part of the jury outweighs any advantage of full disclosure, since the court can simply subtract the consideration given for the settlement from the damages awarded by the jury. *See, e.g., Slayton v. Ford Motor Co.*, 140 Vt. 27, 435 A.2d 946 (1981); *Young v. Verson Allsteel Press Co.*, 539 F. Supp. 193 (E.D. Pa. 1982) (the admissibility at trial of evidence of a pre-trial settlement). We agree a jury should not be told the *amount* of a pre-verdict settlement because the jury may draw improper inferences as to the relative negligence of the parties and the measure of damages. In many cases, however, the trial court should inform the jury of the *existence* of a pre-verdict settlement. *See, e.g., Frey v. Snelgrove*, 269 N.W.2d 918, 922–23 (Minn. Sup. Ct. 1978).

■ ■ When parties reach a settlement after a trial has begun, the court must decide whether to disclose to the jury the reason for a defendant's departure from the courtroom scene, as well as when to make the disclosure. Generally, the trial court should inform the jury of a settlement if it occurs during trial. This decision, however, rests in the discretion of the trial judge, who can assess the circumstances of each case and ensure that the remaining parties receive a fair trial. We will not reverse the trial court's decision absent an abuse of discretion.

■ In this case, the court was advised of the settlement during deliberations. Since the court had before it a potential "hung jury," it apparently did not want to complicate matters by disclosing the settlement. There was no abuse of discretion in this decision.

Because the trial court erroneously apportioned damages and failed to apply the common law rule of several liability, we reverse and remand for the entry of judgment in accordance with this opinion.

*Reversed and remanded.*

BROCK, J., concurred specially; the others concurred.

BROCK, J., concurring specially: I concur specially in the judgment of the court, as I understand it not to foreclose such further litigation as may be appropriate under the Dumas doctrine. *See Dumas v. State Farm Mut. Auto. Ins. Co.*, 111 N.H. 43, 274 A.2d 781 (1971).