Rockingham
No. 2001-425

TRANSMEDIA RESTAURANT COMPANY, INC.

v.

THERESA DEVEREAUX & a.

Argued: January 8, 2003
Opinion Issued: May 2, 2003

*Sheehan, Phinney, Bass & Green, P.A.*, of Manchester (*Robert H. Miller* on the brief), and *Shuchman & Krause–Elmslie, P.L.L.C.*, of Exeter (*Peter F. Kearns* on the brief and orally), for the plaintiff.

*Engel & Associates, P.A.*, of Exeter (*David C. Engel* on the brief and orally), for the defendants.

BROCK, C.J. The plaintiff, Transmedia Restaurant Company, Inc. (Transmedia), appeals a jury verdict from the Superior Court (*McHugh*, J.) finding it liable for claims under the Massachusetts Uniform Commercial Code (UCC), *see* Mass. Gen. Laws Ann. ch. 106, §§ 9-504, 9-507 (West 1999) (amended 2001), and RSA chapter 358-A, the New Hampshire Consumer Protection Act (CPA), and awarding compensatory and multiple damages to the defendants, Theresa Devereaux and The Blarney Stone Tavern, Inc. The defendants cross-appeal the trial court's order of remittitur. We affirm.

The jury could have found the following facts. Devereaux and her husband were restaurateurs. In December 1997, Devereaux opened the Blarney Stone Tavern (Tavern) in Derry. From 1993 until 1998, her husband owned and operated the Blarney Stone Inn (Inn) in Hampton. In 1998, the Devereauxs received two $4,000 loans for their restaurant businesses from Transmedia.

Transmedia is a division of Transmedia Network, Inc., which is a company that loans money to restaurants in exchange for the restaurant's membership in a nationwide network that accepts the Transmedia Card. Consumers use the Transmedia Card at participating restaurants to

receive a discount on their food and beverage tab, not including tax and gratuity. Restaurants repay their loans from Transmedia by transferring 100% of the food and beverage tabs, less taxes and tips, generated by Transmedia cardholders back to Transmedia. Transmedia credits these repayments against the loan until twice the value of the loan has been repaid.

The Inn went out of business in August 1998, and, in February 1999, the Tavern went out of business. In November 1998, the two loans were consolidated.

Transmedia later repossessed and liquidated the Tavern's secured assets to recover the amount due under its loans. In June 1999, the restaurant's equipment was sold in private sale and public auction for $17,363.40. Because the proceeds of the liquidation, less expenses associated with the auction, were less than the amount due on the loans, Transmedia sued to recover the deficiency. The defendants counter-sued, alleging that no deficiency existed, in part, because Transmedia repossessed their restaurant equipment without prior notice and sold the equipment at a price far below its true value. The defendants also alleged that the manner of sale violated the CPA. Just before trial, Transmedia elected to take a nonsuit on its deficiency claim. The case was thus tried solely upon the defendants' counterclaims. The jury found for the defendants and awarded them $140,600 in compensatory damages and $407,800 in multiple damages under the CPA.

Transmedia moved to set aside the verdict, for judgment notwithstanding the verdict and to reduce the damage award. The trial court reduced the jury's compensatory damage award, finding that the evidence could support an award of up to $50,000. Applying a statutory multiplier, see RSA 358-A:10 (1995), the court ruled that the total damages were $145,000, excluding costs and reasonable attorney's fees. The court offered the parties three options, including accepting the court's order of remittitur and thereby concluding the case. The plaintiff and defendants filed motions to reconsider, which the court denied. This appeal and cross-appeal followed.

## I. Transmedia's Appeal

On appeal, Transmedia argues that the trial court: (1) failed to instruct the jury that to award multiple damages under the CPA, it had to find that Transmedia acted willfully or knowingly; (2) failed to include a question regarding whether Transmedia acted willfully or knowingly in the special verdict form; and (3) erroneously permitted the defendants to present their damages theory to the jury without expert testimony. We address each argument in turn.

## A. Jury Instruction

"The purpose of jury instructions is to identify issues of material fact, and to inform the jury of the appropriate standards of law by which it is to resolve them." *Broderick v. Watts*, 136 N.H. 153, 163 (1992). We review jury instructions in context and will not reverse unless the charge, taken in its entirety, fails to adequately explain the law applicable to the case in such a way that the jury is misled. *See Simpson v. Wal-Mart Stores*, 144 N.H. 571, 574 (1999).

The court gave the jury the following instruction regarding the CPA:

> Now, let's talk a little bit about the Consumer Protection Statute. In essence, that statute provides that it shall be unlawful for any person — and by the way, any person is any natural person or a corporation — to use any unfair or deceptive act or practice in the conduct of any trade or commercial transaction in the State of New Hampshire.
>
> It is the responsibility of the jury to determine whether or not any unfair or deceptive act or practice occurred on the part of [Transmedia]. You must consider, after a careful evaluation of all the evidence, whether or not the conduct of [Transmedia] regarding the financial obligation to [Devereaux] constituted an unfair or deceptive business practice. On this issue it is [Devereaux who] has the burden of proof.
>
> If you find that [Transmedia] committed an unfair or deceptive business practice, the Consumer Protection Statute provides that damages are to be awarded in a sum as much as three times, but not less than two times, [Devereaux]'s actual damages.

Transmedia argues that these instructions were erroneous as a matter of law because they did not instruct the jury that, to award double or treble damages, it had to find that Transmedia acted willfully or knowingly. The defendants counter that Transmedia did not argue this below and, thus, has not preserved this argument for appeal. We agree.

"A contemporaneous objection is necessary to preserve a jury instruction issue for appellate review." *Rodriguez v. Webb*, 141 N.H. 177, 183 (1996) (quotation omitted). "This requirement affords the trial court an opportunity to correct an error it may have made and is particularly appropriate where an alleged error involves a jury instruction." *State v. Sinbandith*, 143 N.H. 579, 581 (1999) (quotation omitted). "This long-standing requirement is grounded in common sense and judicial economy, and applies equally to civil and criminal matters." *State v. McCabe*, 145 N.H. 686, 690 (2001) (quotation omitted).

█ Transmedia first contends that it had no duty to object to the jury instructions on the ground that they failed to inform the jury about the willful and knowing requirement because the defendants bore the burden of proof on damages. Transmedia argues that "[i]t may ... have been a tactical decision by Transmedia's trial counsel not to draw attention to this issue." To the contrary, both parties had a duty to ensure that the instructions given to the jury conformed to the law. Transmedia may not, on appeal, ask this court to address issues that, for tactical reasons or otherwise, it failed to raise before the trial judge. *See id.* "Errors discovered by combing the record after trial and never properly presented to the trial judge should not be utilized to set aside a verdict." *State v. Johnson*, 130 N.H. 578, 587 (1988) (quotation omitted).

█ Alternatively, Transmedia asserts that the objections its trial counsel, who was not associated with appellate counsel, made to the court's jury instructions were sufficient to alert the court to the lack of a willfulness instruction. The record belies this assertion. After instructing the jury, the trial court invited counsel for both parties to raise issues about the instructions. Transmedia's counsel stated, "The only thing I have is I don't think it was made clear that if there was a violation of the law, if there was, if there was wrongdoing on the part of [Transmedia], it does not necessarily lead to an award of damages unless damages are shown."
The court responded:

> In the damage portion of the instructions, the general instruction on damages is always the same, and that is the plaintiff's obligations to prove actual damages and a causal connection to the defendant's legal fault. So I think that I've explained the plaintiffs' obligation on damages sufficiently enough. I'm not going to amplify it.

This exchange shows that the trial court did not understand Transmedia's objection to concern the lack of a willfulness instruction. *Cf. State v. Bennett*, 144 N.H. 13, 17 (1999). It is clear from the record that Transmedia did not specifically object to the lack of a willfulness instruction before the jury retired.

█ Transmedia next asserts that its post-trial motions sufficiently alerted the trial court to the lack of a willfulness instruction. Transmedia first raised the issue before the trial court in its motion for reconsideration filed in response to the court's order on Transmedia's post-trial motions. Transmedia's motion for reconsideration, filed nearly two months after the trial concluded, is insufficient, as a matter of law, to preserve the issue for appeal. *See Broderick*, 136 N.H. at 170.

◼ "If an objection is first raised in a post-trial motion that is filed several days after the conclusion of the trial, the objection is not timely regardless of whether it is well founded." *Id.*; *see Mailhot v. C & R Const. Co.*, 128 N.H. 323 (1986) (*per curiam*) (objection to jury instructions raised for first time in motion for new trial not timely). The purpose of the timeliness requirement is to ensure that the trial court has the chance to correct errors at the earliest possible opportunity. *See Broderick*, 136 N.H. at 169; *see also* N.H. R. Ev. 103 Reporter's Notes (purpose of rule requiring contemporaneous objection to admission of evidence is to "permit the court to take cognizance of its error at a time at which it has a meaningful opportunity to correct its ruling"). "For counsel, conscious of error, to be permitted to sit by without making objection until there is less probability the wrong can be cured, would be to turn a rule of justice and fairness into a mere trap." *Broderick*, 136 N.H. at 167 (quotation omitted). We decline Transmedia's "invitation to enlarge the narrow exceptions to the contemporaneous objection requirement." *McCabe*, 145 N.H. at 690.

◼ Finally, Transmedia asserts that this court should adopt the "plain error" rule to prevent the "manifest injustice" that would result were the court not to intervene. Under New Hampshire law, objections not raised at trial are deemed waived. *See Johnson*, 130 N.H. at 587. We have, on numerous prior occasions, considered and rejected the federal plain error rule. *See, e.g., State v. Menard*, 133 N.H. 708, 712 (1990) (reaffirming rejection of plain error rule); *Johnson*, 130 N.H. at 587 (rejecting plain error rule, court declines to rule on whether jury instruction improperly reduced State's burden of proof in criminal trial absent proper objection by defendant at trial). We continue to adhere to our general preservation rule.

*B. Special Verdict Form*

With respect to the CPA claim, the special verdict form asked the jury the following questions:

*QUESTION 5*

Do you find that it is more likely than not that [Transmedia] engaged in any unfair or deceptive business practices in its dealings with [the defendants] with regard to the commercial transaction involving these parties?

. . . .

*QUESTION 6*

Please state in words, not numbers, the full amount of damages which you find more likely than not were sustained by [the defendants] as a result of [Transmedia]'s engaging in unfair or deceptive business practices. Under the Consumer Protection Statute your damages in answering this question must be not less than twice, nor more than three times the actual damages which you have found the [defendants] are entitled to receive . . . .

■ Transmedia argues that these questions are incorrect, as a matter of law, because, like the jury instructions, they fail to inform the jury that to award multiple damages, it must have found that Transmedia acted willfully or knowingly. Transmedia failed to make this argument at trial; thus, this argument is not preserved for appeal. *See Schneider v. Plymouth State College,* 144 N.H. 458, 464 (1999).

*C. Need for Expert Testimony*

At trial, Devereaux testified that, in her opinion, the value of the restaurant equipment Transmedia liquidated was approximately $180,000. Transmedia argues that the trial court erroneously permitted the jury to consider the defendants' theory of damages based solely upon Devereaux's testimony. Transmedia contends that the defendants were required, by law, to produce expert testimony on the value of the restaurant equipment. We disagree.

■ Trial courts enjoy broad discretion with respect to the admission of opinion evidence. *Joslin v. Pine River Dev. Corp.,* 116 N.H. 814, 818 (1976). New Hampshire Rule of Evidence 701 permits a lay witness to give an opinion provided that it is rationally based upon the witness's perception and is helpful to a determination of a fact issue. In this case, we hold that it was not error for the trial court to admit Devereaux's opinion about the value of the restaurant equipment. *See id.; Roy v. State,* 104 N.H. 513, 517 (1963). Devereaux had knowledge about how much she originally paid for it and the trial court could reasonably have found her testimony helpful to the jury in determining the equipment's value. *See McNamara v. Moses,* 146 N.H. 729, 732-33 (2001); *Gintzler v. Melnick,* 116 N.H. 566, 570 (1976).

Expert testimony is required only "where the subject presented is so distinctly related to some science, profession or occupation as to be beyond the ken of the average layperson." *Lemay v. Burnett,* 139 N.H. 633, 634 (1995) (quotation omitted). We conclude that under the facts of this case, opinion evidence on the value of the restaurant equipment offered by its lay purchaser and owner was properly admitted.

■ Transmedia argues that the trial court should have disallowed Devereaux's testimony because she did not opine as to the depreciated value of the equipment. "New Hampshire does not require that damages be calculated with mathematical certainty, and the method used to compute damages need not be more than an approximation." *Maloof v. Bonser*, 145 N.H. 650, 655 (2000) (quotation omitted). The trial court committed no error by submitting to the jury Devereaux's testimony and that of Transmedia's expert and permitting the jury, as fact-finder, to evaluate the credibility of both witnesses and choose to accept or reject their testimony in whole or in part. *See Society Hill at Merrimack Condo. Assoc. v. Town of Merrimack*, 139 N.H. 253, 256 (1994) (trier of fact could properly find plaintiff's expert, who relied upon market auction sales to determine fair market value of real property, not credible). "After all, the essence of a jury's function is to determine the weight and credence to be given the evidence at trial." *State v. Guglielmo*, 130 N.H. 240, 245 (1987) (quotation and brackets omitted); *see Morrill v. Tilney*, 128 N.H. 773, 778 (1986).

## II. Defendants' Cross-Appeal

In their cross-appeal, the defendants argue that the trial court erroneously: (1) ruled that they were not entitled to collect compensatory damages under the CPA, in addition to multiple damages; and (2) set aside the jury's verdict and reduced the damage award. We address each of these arguments in turn.

### A. Compensatory Damages under CPA

The jury awarded the defendants $140,600 in compensatory damages and $407,800 in damages under the CPA. The trial court ruled that the jury applied a multiplier of 2.9 to the compensatory damage award to determine damages under the CPA. The defendants argued that the jury intended the two awards to be added together, resulting in a total award of $548,400. The trial court ruled that adding the awards together was impermissible because it would exceed the amount authorized under the CPA.

In their cross-appeal, the defendants argue that the trial court erred. They assert that because they had two causes of action, one under Massachusetts law and the other under the CPA, they were entitled to receive both awards. We disagree.

■ Under New Hampshire law, an injured party "cannot claim multiple recoveries for the same loss even though different theories of liability are alleged in the complaint." *Phillips v. Verax Corp.*, 138 N.H. 240, 248

(1994). In this case, the defendants alleged that they were injured because Transmedia seized their assets and sold them without notice. For this injury, they sought relief under the Massachusetts UCC and the New Hampshire CPA. Where, as here, the defendants' claims arise out of the same core of operative facts, they are entitled to a single recovery only. *See id.* at 248-49; *see also LaBarre v. Shepard,* 84 F.3d 496, 501-02 (1st Cir. 1996). They are not entitled to multiple recoveries for the same loss. *See Phillips,* 138 N.H. at 248. Thus, the trial court did not err by ruling that the compensatory damage award was duplicative.

The defendants mistakenly rely upon RSA 358-A:12 (1995) to argue that they were entitled to compensatory damages in addition to treble damages. "On questions of statutory interpretation, this court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *Milford Lumber Co. v. RCB Realty,* 147 N.H. 15, 17 (2001) (quotation omitted). We first consider the plain meaning of the words of the statute, focusing upon the statute as a whole, not on isolated words or phrases. *See id.* "We will not consider what the legislature might have said or add words that the legislature did not include." *Id.* (quotation and brackets omitted).

RSA 358-A:12 states, "This chapter does not affect unfair trade practices otherwise actionable at common law or under other statutes of this state." This provision does not address recovery of duplicative damages for the same unfair trade practice injury. Rather, it merely states that the remedies under the CPA are not intended to be exclusive. Individuals injured by unfair trade practices may seek a remedy for this injury under common law or other New Hampshire statutes; they need not seek a remedy under the CPA. *See LaBarre,* 84 F.3d at 501-02 (CPA does not permit duplicative recovery; plaintiff's recovery may not exceed treble damages allowable under CPA); *Calimlim v. Foreign Car Center, Inc.,* 467 N.E.2d 443, 448 (Mass. 1984) (recovery of cumulative damages under Massachusetts Consumer Protection Act and any other common law, statutory or regulatory cause of action not permitted where recovery sought for same injury).

### B. Reduction of Compensatory Damage Award

The defendants argue that the trial court erroneously reduced the jury's compensatory damage award of $140,600. "Direct review of a damages award is the responsibility of the trial judge, who may disturb a verdict as excessive (or inadequate) if its amount is conclusively against the weight of the evidence and if the verdict is manifestly exorbitant." *Bennett v. Lembo,* 145 N.H. 276, 281-82 (2000) (quotation omitted). The

proper standard for the trial court's review of a jury award is whether the verdict is fair. *See LeFavor v. Ford*, 135 N.H. 311, 316 (1992). "A trial judge has the responsibility not only to see that the trial is fairly conducted but also to correct or vacate what turns out to be an unfair result." *Thibeault v. Campbell*, 136 N.H. 698, 703 (1993) (quotation omitted). Whether remittitur is appropriate rests with the trial court's sound discretion. *See Brannigan v. Usitalo*, 134 N.H. 50, 58 (1991). We will not reverse the trial court's decision to reduce a jury award unless we find the decision to be unreasonable. *See Thibeault*, 136 N.H. at 703. "Our task on review is not to attempt to ascertain or divine the one and only correct verdict." *Lembo*, 145 N.H. at 282 (quotation omitted).

Having reviewed the record, we conclude that the trial court could reasonably have determined that the jury's compensatory damage award was both manifestly exorbitant and conclusively against the weight of evidence. *See Thibeault*, 136 N.H. at 704. We disagree with the defendants that the trial court reduced the compensatory damage award solely because of exhibit 21, which was comprised of a cover sheet and several receipts for restaurant equipment charges. Therefore, we do not address their argument that the court had no authority to do so.

*Affirmed.*

BRODERICK, NADEAU, DALIANIS and DUGGAN, JJ., concurred.