Hillsborough-northern judicial district
No. 2003-028

# LEIF NILSSON

v.

# JOSEPH A. BIERMAN

Argued: October 9, 2003
Opinion Issued: December 29, 2003

*McDowell & Osburn, P.A.*, of Manchester (*Jeffrey B. Osburn* and *David S.V. Shirley* on the brief, and *Mr. Osburn* orally), for the plaintiff.

*Desmarais, Ewing & Johnston, PLLC*, of Manchester (*Fred J. Desmarais* and *Heather G. Silverstein* on the brief, and *Ms. Silverstein* orally), for the defendant.

*McNeill, Taylor & Gallo, P.A.*, of Dover (*R. Peter Taylor* on the brief), for the New Hampshire Trial Lawyers Association, as *amicus curiae*.

BRODERICK, J. The plaintiff, Leif Nilsson, appeals from a jury verdict in Superior Court (*Barry*, J.) that apportioned fault on his negligence claim between the defendant, Joseph A. Bierman, and Eric Robert Knight, a joint tortfeasor who settled before trial. *See* RSA 507:7-e (1997). The defendant cross-appeals, arguing that the court's jury instructions regarding speed were misleading. We affirm.

*I. Appeal*

*A. Facts*

The plaintiff was a passenger in Knight's car when Knight failed to stop at a stop sign and collided with the defendant's car. The plaintiff sued both the defendant and Knight for his injuries. Shortly before trial, he settled his claim against Knight for $25,000.

Over the plaintiff's objection, the trial court instructed the jury about proportional fault and, in special verdict questions, asked it to assess the percentage of fault, if any, that was attributable to Knight and the defendant. The jury awarded damages in the amount of $170,000. The jury found both the defendant and Knight legally at fault for the plaintiff's injuries. The jury apportioned ninety-nine percent of this fault to Knight and one percent to the defendant.

The plaintiff moved to amend the verdict to make the defendant responsible for the entire damage award less the $25,000 settlement from Knight. The court denied the motion.

*B. Discussion*

*1. RSA 507:7-e*

On appeal, the plaintiff argues that the court committed legal error by requiring the jury to apportion fault between the defendant and Knight. He asserts that the statute governing apportionment, RSA 507:7-e, mandates apportioning fault among parties, not between a nonsettling and a settling tortfeasor. He contends also that the statute applies only when the plaintiff was comparatively negligent, not, as here, when the plaintiff was not negligent.

Resolution of this appeal requires us to reconcile conflicting portions of RSA chapter 507. In matters of statutory interpretation, this court is the final arbiter of the legislature's intent. *Franklin Lodge of Elks v. Marcoux*, 149 N.H. 581, 585 (2003). We begin by examining the language of the statute and ascribing the plain and ordinary meanings to the words the legislature used. *Id.* We do not construe statutes in isolation; instead, we attempt to do so in harmony with the overall statutory scheme. *Big League Entm't v. Brox Indus.*, 149 N.H. 480, 483 (2003). "When interpreting two statutes which deal with a similar subject matter, we . . . construe them so that they do not contradict each other, and so that they will lead to reasonable results and effectuate the legislative purpose of the statute." *Pennelli v. Town of Pelham*, 148 N.H. 365, 366 (2002) (quotation omitted).

Section 7-e is part of a "comprehensive statutory framework for apportionment of liability and contribution." 8 R. McNAMARA, NEW HAMPSHIRE PRACTICE, PERSONAL INJURY-TORT AND INSURANCE PRACTICE § 4.63, at 4-98 (3d ed. 2003). The other provisions in this statutory scheme are: RSA 507:7-d (1997) (comparative fault); RSA 507:7-f (1997) (contribution among tortfeasors); RSA 507:7-g (1997) (enforcement of contribution); RSA 507:7-h (1997) (effect of release or covenant not to sue); and RSA 507:7-i (1997) (inadmissible evidence and post-verdict procedure). The legislature intended these provisions to function as "a unified and comprehensive approach to comparative fault, apportionment of damages, and contribution." *Jaswell Drill Corp. v. General Motors Corp.*, 129 N.H. 341, 344-45 (1987).

Section 7-e provides, in pertinent part:

I. In all actions, the court shall:

(a) Instruct the jury to determine, or if there is no jury shall find, the amount of damages to be awarded to each claimant and against each defendant in accordance with the proportionate fault of each of the parties; and

(b) Enter judgment against each party liable on the basis of the rules of joint and several liability, except that if any party shall be less than 50 percent at fault, then that party's liability shall be several and not joint and he shall be liable only for the damages attributable to him.

RSA 507:7-e, I(a), (b).

 The plaintiff argues that the plain and ordinary meaning of the word "party" does not include a defendant who, like Knight, settled with the plaintiff before trial. We disagree. A "party" is "[o]ne who takes part in a transaction" or "[o]ne by or against whom a lawsuit is brought." BLACK'S LAW DICTIONARY 1144 (7th ed. 1999). As other courts have noted when construing similar statutes, the term "party" may mean persons involved in an accident, defendants in a lawsuit, or all litigants in a lawsuit. *Benner v. Wichman*, 874 P.2d 949, 956 (Alaska 1994). We hold that for apportionment purposes under section 7-e, I(b), the word "party" refers to "parties to an action, including . . . settling parties." *Id.* at 958.

This construction is consistent with our decision in *Rodgers v. Colby's Ol' Place*, 148 N.H. 41 (2002). In that case, we applied section 7-e, I, to the defendants even though they settled with the plaintiff before trial. *Id.* at 41-44. The settlement agreement had provided that one defendant was liable for fifty percent of the plaintiffs' damages, while the other was liable for less than fifty percent. *Id.* at 42. The parties further agreed that the defendant who was liable for more than fifty percent of the plaintiffs' damages was judgment proof. *Id.* The plaintiff sought to reallocate the judgment proof defendant's liability to the less negligent defendant. *Id.* We ruled that under section 7-e, I(b), the less negligent defendant was only liable for his portion of damages. *Id.* at 42-43.

Our construction is also in accord with decisions from other jurisdictions. Most jurisdictions permit juries to allocate fault among settling and nonsettling tortfeasors. *See Carroll v. Whitney*, 29 S.W.3d 14, 17 n.5 (Tenn. 2000) (noting that a minority of jurisdictions permit apportionment of fault only to parties before court). Many jurisdictions even permit a jury to consider nonparties when apportioning fault. *See* 1

COMP. NEGL. MANUAL (CBC) § 14.9 (3d ed. 1995). We need not, in this decision, reach the issue of whether a tortfeasor, such as one who is immune from liability or otherwise not before the court, constitutes a "party" under section 7-e. *See* 2 COMP. NEGL. (MB) § 13.20[4] (2002).

The plaintiff further contends that section 7-e, I, does not apply when the plaintiff is not negligent. The plaintiff bases his argument upon *Lavoie v. Hollinracke*, 127 N.H. 764 (1986). In that case, we held that apportionment applied only when the plaintiff was contributorily negligent; when the plaintiff was not negligent, the rules of joint and several liability applied. *See id.* at 768-70. Our holding was based upon the language of the predecessor to section 7-e, RSA 507:7-a (1983) (repealed 1986).

Former section 7-a provided, in relevant part:

> Contributory negligence shall not bar recovery in an action by any plaintiff, or his legal representative, to recover damages for negligence resulting in death, personal injury, or property damage, if such negligence was not greater than the causal negligence of the defendant, but the damages awarded shall be diminished, by general verdict, in proportion to the amount of negligence attributed to the plaintiff; provided that where recovery is allowed against more than one defendant, each such defendant shall be liable for that proportion of the total dollar amount awarded as damages in the ratio of the amount of his causal negligence to the amount of causal negligence attributed to all defendants against whom recovery is allowed.

Section 7-a thus linked apportionment and contributory negligence.

By contrast, in 1986, the legislature separated the two concepts. It enacted section 7-d to address contributory negligence and section 7-e to address apportionment. RSA 507:7-d, 7-e. This altered the prior rule under former section 7-a that the jury need not apportion damages unless the plaintiff was contributorily negligent. *See Jaswell Drill Corp.*, 129 N.H. at 344. As enacted in 1986, section 7-e "provide[d] for apportionment of damages in all actions," not only those involving contributorily negligent plaintiffs. *Id.; see also* 8 R. MCNAMARA, *supra* § 12.03, at 12-4 to 12-5.

We decline to address the plaintiff's arguments that apportioning fault between the defendant and Knight violated his constitutional rights because he has not preserved these arguments for our review. *See Weldy v. Town of Kingston*, 128 N.H. 325, 334-35 (1986). Like the plaintiff in *Weldy*, the plaintiff failed to raise these claims before the trial court

instructed the jury, raising them for the first time in a post-verdict motion. *Id.* at 334. Although the plaintiff objected to the trial court's comparative fault instructions and special verdict form, he failed to inform the court that his objections were constitutionally based. Like the plaintiff in *Weldy*, the plaintiff was obligated to bring his constitutional claims to the trial court's attention before the court instructed the jury, and he may not now raise these issues on appeal. *Id.* at 334-35.

### 2. Sections 7-h and 7-i

The plaintiff argues that instead of apportioning fault under section 7-e, I(b), the trial court should have followed sections 7-h and 7-i. *See* RSA 507:7-e, 7-h, 7-i. Under sections 7-h and 7-i, he asserts, he was entitled to a verdict for his entire damages less the $25,000 settlement with Knight. *See* RSA 507:7-h, 7-i. We disagree.

Both section 7-h and section 7-i provide that when a plaintiff settles in good faith with one of two or more tortfeasors, the nonsettling tortfeasor is entitled to a dollar for dollar reduction in the amount of the verdict equal to the consideration the plaintiff received from the settling tortfeasor. *See* RSA 507:7-h, 7-i.

Section 7-h provides, in pertinent part, that when a plaintiff has released one of two or more joint tortfeasors, any claim he or she may have against other tortfeasors is reduced "by the amount of the consideration paid for the release." RSA 507:7-h. Section 7-i similarly provides, in pertinent part, that when a plaintiff has settled with one or more joint tortfeasors, upon return of a plaintiff's verdict, "the court shall inquire of counsel the amount of consideration paid for any such settlement, release, or covenant not to sue, and shall reduce the plaintiff's verdict by that amount." RSA 507:7-i.

This dollar for dollar reduction in the verdict is referred to as a "pro tanto credit." *See* Hager, *What's (Not!) in a Restatement? ALI Issue-Dodging on Liability Apportionment*, 33 CONN. L. REV. 77, 80 (2000). The pro tanto credit "is premised and rooted in joint-and-several liability." *Krieser v. Hobbs*, 166 F.3d 736, 742 (5th Cir. 1999). Its purpose is to prevent a plaintiff "from recovering twice from the same assessment of liability." *Id.* at 743.

The majority rule is that the pro tanto credit does not apply when a defendant is only severally liable for his proportionate share of damages. *See id.* at 744. "[W]here liability is not joint-and-several, and each defendant instead bears liability for damages *only proportionate* to his own fault, there *is no* assessment of liability for damages common to the settling and non-settling defendants." *Id.* at 743. Thus, there is no need for

a pro tanto credit. *See Waite v. Morisette*, 843 P.2d 1121, 1124 (Wash. Ct. App.), *amended by* 851 P.2d 1241 (1993). As one court has explained:

> Under several only liability, the defendant is liable only for the amount of the plaintiff's damages that is proportional to the defendant's percentage of fault. Thus, offsetting a plaintiff's damages by the amount of a non-party's settlement is unnecessary because the defendant pays only his share of the damages.

*Gemstar Ltd. v. Ernst & Young*, 917 P.2d 222, 237 (Ariz. 1996) (citation omitted).

■ Following this majority rule, we hold that the pro tanto credit set forth in sections 7-h and 7-i does not apply to the defendant because, under section 7-e, I(b), he is only severally liable for his proportionate share of damages. Sections 7-h and 7-i apply only to defendants who are both jointly and severally liable, not to defendants who are only severally liable.

Applying sections 7-h and 7-i to the defendant would contravene the legislature's purpose in amending section 7-e, I(b). *See Rodgers*, 148 N.H. at 44. When these provisions were first enacted, *all* defendants were subject to joint and several liability. *See id.* at 43. In 1989, the legislature amended section 7-e, I(b) "to protect minimally liable defendants." *Id.* at 44. "The amendment limited the liability of a defendant found to be less than fifty percent at fault to several liability." *Id.* Requiring such a defendant to be jointly and severally liable for all of the plaintiff's damages, less a pro tanto credit, "would reintroduce joint liability for defendants who are less than fifty percent liable, which was the very liability the 1989 amendment to the statute intended to eliminate." *Id.*

The plaintiff argues that apportioning liability in this case is unfair because it means that he will not recover his entire damages, even though he is without fault. While we are not unsympathetic, we are constrained by the statutory scheme our legislature has enacted. How best to apportion liability among a plaintiff, a settling joint tortfeasor and a nonsettling joint tortfeasor is a matter of public policy for the legislature. *See Minuteman, LLC v. Microsoft Corp.*, 147 N.H. 634, 641-42 (2002).

There are three basic alternatives to apportioning liability when a plaintiff has settled with fewer than all joint tortfeasors: the pro tanto credit rule, *see* RSA 507:7-h, 7-i; the "proportional share approach," *see* RSA 507:7-e; and the "pro rata" approach. The "pro rata" approach involves giving a nonsettling tortfeasor a credit against the judgment equal to the settling tortfeasor's share of damages, which is determined by

dividing the recoverable damages by the number of liable parties. RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY Reporter's Notes § 16 comment c at 139-40 (2000). This approach is not at issue.

Theorists and courts differ as to whether it is preferable to give a nonsettling tortfeasor a pro tanto credit, as set forth in sections 7-h and 7-i, or to use the proportional share approach, as set forth in section 7-e, I(b). *See McDermott, Inc. v. AmClyde*, 511 U.S. 202, 211-17 (1994).

The American Law Institute favors the proportional share approach. *See* RESTATEMENT (THIRD) OF TORTS § 16 comment c at 133-36, 139-44. So does the United States Supreme Court. *McDermott*, 511 U.S. at 217. On the other hand, the "overwhelming majority" of States reject the proportional share approach in favor of some version of the pro tanto approach. Hager, *supra* at 109 n.90; *see also* Eggen, *Understanding State Contribution Laws and Their Effect on the Settlement of Mass Tort Actions*, 73 TEX. L. REV. 1701, 1709 (1995). Valid public policy arguments support both approaches. *See McDermott*, 511 U.S. at 211-17; *see* Eggen, *supra* at 1740-50.

The New Hampshire legislature has elected to apportion liability under both approaches, using the pro tanto approach for jointly and severally liable defendants, *see* RSA 507:7-h, 7-i, and the proportional share approach for severally liable defendants, *see* RSA 507:7-e, I(b). As the defendant correctly observes, the comprehensive scheme of RSA chapter 507 reflects the legislature's careful balance of the rights of defendants and plaintiffs. It is not our place to upset this balance.

*II. Cross Appeal*

In his cross-appeal, the defendant challenges the court's jury instructions regarding his speed. The purpose of jury instructions is to identify issues of material fact, and to inform the jury of the appropriate standards of law by which it is to resolve them. *Transmedia Restaurant Co. v. Devereaux*, 149 N.H. 454, 457 (2003). We review jury instructions in context and will not reverse unless the charge, taken in its entirety, fails to adequately explain the law applicable to the case in such a way that the jury is misled. *Id.*

*A. Challenged Instructions*

The trial court's instructions on speed were as follows:

> While paying attention to all road conditions and to any actual and potential hazards to safe driving, everyone must drive at a

reasonable and prudent speed. All drivers must control their speed so that they are able to avoid striking pedestrians and other vehicles which are already on, or just entering the roadway. . . .

Generally speaking, speed must be reduced appropriately whenever a driver approaches or crosses an intersection or railway grade crossing, or approaches or goes around a curve, or approaches a hillcrest, or is on a narrow or winding roadway. Speed must be reduced appropriately whenever a special hazard exists with respect to pedestrians, other traffic, weather or highway conditions.

No person shall drive a vehicle on a way at a speed greater than is reasonable and prudent under the circumstances and having regard to the actual and potential hazards then existing. In every event speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the way in compliance with legal requirements and the duty of all persons to use due care.

Where no hazard exists that requires lower speed for compliance with Revised Statutes Annotated, Chapter 265, Section 60, Subsection I, the speed of any vehicle not in excess of the limit specified in this section or established as hereinafter authorized shall be prima facie lawful, but any speed in excess of the limit specified in this section, or established as hereinafter authorized shall be prima faci[e] evidence that the speed is not reasonable or prudent, and that it is unlawful.

The court also instructed the jury that "if you find that the violation [of the provisions of a motor vehicle statute] caused or contributed to cause the injury or damage suffered by the plaintiff, [it] amounts to legal fault."

*B. Superior Court Rule 63(H)*

The defendant first argues that these instructions violated Superior Court Rule 63(H), which provides:

The issue of speed of a motor vehicle on a public highway, if material, will be submitted on the grounds of reasonableness without regard to statutory provisions relative to rates of speed that are *prima facie* reasonable, unless counsel objects thereto at the pretrial settlement conference, or files written objection thereto at least seven days before the trial.

SUPER. CT. R. 63(H). The plaintiff counters that defendant did not make this argument before the trial court, and, thus, did not preserve it for appeal. *See Transmedia Restaurant*, 149 N.H. at 457. We agree.

■ "A contemporaneous objection is necessary to preserve a jury instruction issue for appellate review." *Id.* (quotation omitted). Without a contemporaneous objection, the trial court is not afforded the opportunity to correct an error it may have made. *Id.* The defendant did not alert the trial court that its instruction violated Superior Court Rule 63(H). He "may not, on appeal, ask this court to address issues that, for tactical reasons or otherwise, [he] failed to raise before the trial judge." *Id.* at 458.

### C. RSA 265:67, II

■ The defendant next contends that the court's instructions conflict with RSA 265:67, II (1993), which states that *prima facie* speed limits "shall not be construed to relieve the plaintiff in any action from the burden of proving negligence on the part of the defendant as the proximate cause of an accident." Viewing the court's instructions as a whole, we agree with the plaintiff that they adequately explained the law under RSA 265:67. *See Transmedia Restaurant*, 149 N.H. at 457.

The court's jury instructions included the following:

> Negligence is the failure to use reasonable care. . . . Failure to exercise due care amounts to legal fault if you find it caused or contributed to cause the injury or damage suffered by the plaintiff.
> . . . .
> With respect to the plaintiff's claim of legal fault against the defendant, the plaintiff has the burden of proof.
> . . . .
> In order to recover, the plaintiff[] must prove that the defendant is legally at fault for the injury. To do this, the plaintiff must prove that the defendant was negligent, and th[at] such liability was a legal cause of the accident and injury.
> Negligence amounts to legal fau[l]t if you find that the negligence was a legal cause of the injury. When are they a legal cause of harm? When the negligence is a substantial factor in bringing about the harm, and if the harm would not have occurred without that conduct. On the other hand, if negligent conduct is not a substantial factor in bringing about the harm, it cannot be the basis for a finding of legal harm.

> In determining whether the defendant's conduct was a legal cause of the plaintiff's injury, you need not find that the defendant's conduct was the sole cause of the injury. You need only find that it was a contributing factor in causing the accident, although other factors may have contributed to cause the accident.
>
> . . . .
>
> If you decide that defendant was legally at fault, you will then decide whether plaintiff has proved any of the items of loss or harm that I shall talk about in a couple of minutes.
>
> . . . .
>
> For each item of loss or harm that plaintiff claims, plaintiff must prove that it is more probable than not, that (1) plaintiff has (or will have) such a loss or harm and (2) the loss or harm was caused by the legal fault of defendant.

These instructions adequately apprised the jury that the plaintiff had the burden of proving the defendant's negligence as the proximate cause of the accident, as required by RSA 265:67.

█ The defendant contends that the court's instructions on burden of proof, negligence and proximate cause were "lost on the jury." We presume that jurors follow the court's instructions, however. *See State v. Fortier*, 146 N.H. 784, 793 (2001).

### D. Chellman v. Saab-Scania

The defendant mistakenly relies upon *Chellman v. Saab-Scania AB*, 138 N.H. 73, 81 (1993). *Chellman* was a products liability case in which the manufacturer had asserted, as an affirmative defense, that the driver's misconduct caused his car accident. *Id.* at 76, 81. The plaintiffs admitted that the driver's speed exceeded the speed limit. *Id.* at 81. The trial court instructed the jurors that if they found that the driver "violated the statutory speed limit and that his speed caused or contributed to cause the accident, then his speed was misconduct as a matter of law and they should determine the extent of his misconduct." *Id.* We held that these instructions took the question of whether the driver's speed was reasonable and prudent away from the jury. *Id.*

By contrast, in this case, whether the defendant exceeded the speed limit was disputed. Further, the court's instructions made clear that the jury was to determine whether the defendant's speed was reasonable and prudent under the circumstances. In making this determination, the court

instructed the jury to examine a number of factors, including traffic, weather and highway conditions.

Consistent with the court's instructions, the jury could have found the defendant's speed reasonable, under the circumstances, even if it violated the statutory speed limit of thirty miles per hour. *See* RSA 265:60, II(b) (1993); RSA 259:118 (1993). For instance, the jury could have believed the testimony of a former State trooper who testified that, in his opinion, traveling at thirty-five to forty miles per hour would not have been unreasonable given the traffic, weather and highway conditions that existed at the time of the accident. He explained that, in his experience, "on a Sunday afternoon in the middle of the summer, very light traffic, very light if any pedestrian traffic, I certainly don't think 40 was unreasonable if that was indeed the speed."

These instructions, unlike those in *Chellman*, did not remove the question of whether the defendant's speed was reasonable and prudent from the jury's consideration. Viewed as a whole, these instructions, unlike the *Chellman* instructions, permitted the jury to find that even though the defendant's speed exceeded the speed limit, his speed was reasonable under the circumstances.

### E. Failure to Define "Prima Facie"

The defendant argues that the trial court's instructions were particularly misleading because they did not define the phrase "prima facie evidence." While we agree with the defendant that it would have been preferable for the court to have defined the phrase, *see id.*, when viewing the instructions as a whole, we cannot say that its failure to do so failed to adequately explain the law so as to mislead the jury. *Transmedia Restaurant*, 149 N.H. at 457. Viewed as a whole, the instructions adequately informed the jury that whether the defendant's speed was reasonable and prudent was more than just a function of whether it complied with the statutory speed limits.

*Affirmed.*

BROCK, C.J., and NADEAU, DALIANIS and DUGGAN, JJ., concurred.