Belknap
No. 2003-407

MARY CARIGNAN

v.

NEW HAMPSHIRE INTERNATIONAL SPEEDWAY, INC. *& a.*

Argued: May 13, 2004
Opinion Issued: September 9, 2004

410

*Matthew J. Lahey*, of Laconia, by brief and orally, for the plaintiff.

*Erica Bodwell*, of Concord, on the brief, and *Backus, Meyer, Solomon & Branch, LLP*, of Manchester (*Barry M. Scotch* on the brief and orally), for defendant New Hampshire International Speedway, Inc.

*Bouchard & Kleinman, P.A.*, of Hampton (*Kenneth G. Bouchard* and *Shenanne R. Tucker* on the brief, and *Mr. Bouchard* orally), for defendant Leslie Wheeler.

NADEAU, J. The defendants, New Hampshire International Speedway, Inc. (Speedway) and Leslie Wheeler, appeal a jury verdict from the Superior Court (*Smith*, J.) awarding the plaintiff, Mary Carignan, $1.2 million in damages. We affirm in part, vacate in part and remand.

The jury could have found the following facts. On August 23, 1998, Speedway owned the New Hampshire International Speedway, a racetrack adjacent to Route 106 in Loudon. On that day, Speedway opened a portion of its parking facility to allow patrons to park recreational vehicles (RVs) the weekend before the Winston Cup race. Perimeter Road, a private road owned by Speedway, served as the south entrance from Route 106 to the racetrack.

On the morning of August 23, Wheeler and his wife Penelope, who were planning to attend the race, drove their RV and towed their pick-up truck to the Loudon area. They parked at a Gulf Gas Station, located on Route 106 across from the racetrack, several hundred feet north of Perimeter Road, where they waited for the parking area to open. Around 10:00 a.m., upon noticing other vehicles entering the facility, Wheeler pulled out of the Gulf Station into the southbound lane of Route 106 and began driving

toward Perimeter Road. Meanwhile, the plaintiff's husband, Dennis Carignan (Carignan), was also driving south on Route 106 on a motorcycle, upon which his wife, the plaintiff, was a passenger.

As he approached Perimeter Road, Wheeler noticed Frederick Neergaard, a Speedway employee, signaling Wheeler onto Perimeter Road. Speedway had stationed Neergaard at the entrance of the parking area at a "stop-bar" gate, near the entrance of Perimeter Road, to serve as a security guard for RVs entering the property. Wheeler activated his left directional signal and began to turn left onto the road. At approximately the same time, Carignan put his left directional signal on and attempted to pass the RV on its left side. During the attempted pass, the motorcycle collided with the RV, near the junction of Route 106 and Perimeter Road.

As a result, the plaintiff was ejected from the motorcycle and sustained an injury to her right knee, lacerations on her ankle, and a broken hip. The plaintiff instituted a negligence action against Wheeler, Speedway, and Carignan. Prior to trial, the plaintiff moved *in limine* to exclude, among other things, the police report filed by Officer Locke, the officer who investigated the accident. At the close of the plaintiff's evidence and again at the close of all evidence, all the defendants moved for directed verdicts. The trial judge denied all motions. The jury returned a verdict in favor of the plaintiff for $1.2 million, finding Wheeler 75% responsible, Speedway 25% responsible, and Carignan not liable. Wheeler and Speedway both moved for a judgment notwithstanding the verdict and remittitur, and Wheeler moved to set aside the trial and for a new trial, all of which were denied.

## I. Speedway's Appeal

Speedway contends that the trial court erred when it determined as a matter of law that Speedway owed a duty of care to the plaintiff. Specifically, it argues that it did not have control over the adjacent public way, and thus as an adjacent landowner, it did not owe the plaintiff a duty of care. The plaintiff argues that Speedway voluntarily assumed a duty to direct traffic, and in doing so, it was required to act with reasonable care. We agree.

"It is axiomatic that in order to prove actionable negligence, a plaintiff must establish that the defendant owed a duty to the plaintiff, breached that duty, and that the breach proximately caused the claimed injury." *Estate of Joshua T. v. State*, 150 N.H. 405, 407 (2003). Absent the existence of a duty, a defendant cannot be liable for negligence. *Williams v. O'Brien*, 140 N.H. 595, 599 (1995). Whether a duty exists in a particular case is a question of law, *id.*, which we review *de novo, In re Estate of Hollett*, 150 N.H. 39, 42 (2003).

■ This court has acknowledged that one who voluntarily assumes a duty thereafter has a duty to act with reasonable care. *Walls v. Oxford Management Co.*, 137 N.H. 653, 659 (1993). Thus, one who gratuitously or contractually provides services "may be liable to third parties for a foreseeable harm resulting from the breach of a duty of care." *Williams*, 140 N.H. at 600; *see Walls*, 137 N.H. at 659. As we established in *Williams*, determining whether a duty should be recognized in a signaling case is based upon "a balancing of the societal interest involved, the severity of the risk, the burden upon the defendant, the likelihood of occurrence and the relationship between the parties." *Williams*, 140 N.H. at 599 (quotation omitted). Because Speedway voluntarily placed Neergaard on its property to signal potential patrons from Route 106 onto its property, we conclude that the factors set forth in *Williams* apply to this case.

■ Balancing those interests, we conclude a duty should be recognized. Speedway was using its property adjacent to Route 106 for commercial gain. In furtherance of this purpose, it placed Neergaard on its property to direct potential patrons from Route 106 onto its property. The severity of the risk created by this activity is high, its occurrence likely and the burden upon the defendant to guard against it slight. Accordingly, having undertaken the task of directing the driving public onto its property, under these circumstances, Speedway was required to exercise care to avoid exposing persons to risk of injury that occurs offsite. *See Kellner v. Lowney*, 145 N.H. 195, 200 (2000). Speedway is therefore liable to the plaintiff "for a foreseeable harm resulting from the breach of [its] duty of care." *Williams*, 140 N.H. at 600.

Therefore, the trial court did not err in finding that Speedway voluntarily assumed a duty of reasonable care to the plaintiff. Having decided that Speedway voluntarily assumed a duty of reasonable care, we need not address the plaintiff's argument that because Speedway created an unreasonable risk of harm to users of the public road, it owed a duty of care as an adjacent landowner.

Next, Speedway argues that the trial court should have granted its motion for a directed verdict because it did not breach its duty of care, and because it did not cause the plaintiff's injury.

Our review of a trial court's denial of a motion for a directed verdict is extremely narrow. *Weldy v. Town of Kingston*, 128 N.H. 325, 330 (1986). We will uphold a denial of the motion where sufficient evidence in the record supports the ruling. *Id.* A party is entitled to a directed verdict only when the "sole reasonable inference that may be drawn from the evidence, which must be viewed in the light most favorable to the nonmoving party, is so overwhelmingly in favor of the moving party that no contrary verdict

could stand." *Bronson v. The Hitchcock Clinic*, 140 N.H. 798, 800 (1996) (quotation omitted).

"The test of due care is what reasonable prudence would require under similar circumstances." *Weldy*, 128 N.H. at 330-31. Whether the defendant breached that duty of care is a question for the trier of fact. *See Young v. Clogston*, 127 N.H. 340, 343 (1985).

Wheeler testified that Neergaard waved or made a gesture with his hand "acknowledg[ing] that it was okay" for Wheeler to enter the facility in his RV. The plaintiff testified that she saw Neergaard waving a red flag in a big arm motion. In contrast, Neergaard testified that neither he nor any Speedway employee waved Wheeler's RV into the parking area. Neergaard testified, however, that one of his primary jobs at the speedway on August 23 was to direct RVs from Route 106 onto Perimeter Road and into the proper lane for parking. He also testified that he could not see traffic traveling southbound on Route 106, and that it would have been imprudent to wave a vehicle into the parking lot traveling southerly because he "had no way of seeing the traffic flow." Viewing this evidence in the light most favorable to the plaintiff, the jury could have drawn more than one inference.

Next, we turn to causation. Speedway argues that it did not cause the plaintiff's injury because Wheeler "did not rely on the signaler in deciding when to make the left turn." We do not interpret causation so narrowly.

Causation focuses on the mechanical sequence of events. *Island Shores Estates Condo. Assoc. v. City of Concord*, 136 N.H. 300, 304 (1992). Proximate cause involves both cause-in-fact and legal cause. *Estate of Joshua T.*, 150 N.H. at 407. Cause-in-fact requires the plaintiff to show that the injury would not have occurred but for the negligent conduct. *Id.* The plaintiff "must produce evidence sufficient to warrant a reasonable juror's conclusion that the causal link between the negligence and the injury probably existed." *Id.* at 407-08 (quotation omitted). Additionally, legal cause requires the plaintiff to establish that the negligent conduct was a substantial factor in bringing about the harm. *Id.* at 408. The negligent conduct need not be the *sole* cause of the injury; however, to establish proximate cause, the plaintiff must prove that the defendant's conduct caused or contributed to cause the harm. *Id.* Proximate cause is generally for the trier of fact to resolve. *Id.*

Based upon Wheeler's testimony that Neergaard waved or made a gesture with his hand indicating it was okay for Wheeler to enter the facility, the jury could have found that Neergaard's actions initiated the mechanical sequence of events leading to the plaintiff's injuries, and thus constituted a substantial factor. Therefore, because there was more than

one reasonable inference to be drawn from the evidence, the trial judge correctly denied the motion for a directed verdict.

Speedway next argues that the trial court should have granted a remittitur because the verdict was manifestly exorbitant and conclusively against the evidence. We disagree.

"Direct review of a damages award is the responsibility of the trial judge, who may disturb a verdict as excessive (or inadequate) if its amount is conclusively against the weight of the evidence and if the verdict is manifestly exorbitant." *Transmedia Restaurant Co. v. Devereaux*, 149 N.H. 454, 462 (2003) (quotation omitted). The proper standard for the trial court's review of a jury award is whether the verdict is fair. *Id.* at 462-63. A trial judge has the responsibility not only to ensure that the trial is fairly conducted but also to correct or vacate what turns out to be an unfair result. *Id.* at 463. Whether remittitur is appropriate rests with the trial court's sound discretion. *Id.* Absent an unsustainable exercise of discretion, we will not reverse the trial court's decision. *State v. Lambert*, 147 N.H. 295, 296 (2001). "Our task on review is not to attempt to ascertain or divine the one and only correct verdict." *Bennett v. Lembo*, 145 N.H. 276, 282 (2000) (quotation omitted).

In support of its argument, Speedway cites isolated portions of the plaintiff's testimony including statements that she was happy that she had hip replacement surgery, and that currently she can drive and do most of the things that she did before the accident. The plaintiff testified, however, that she injured her knee and hip, which required immediate surgery and a four-day stay in the Concord Hospital. The hip injury required extensive physical therapy, and ultimately total hip replacement surgery, which necessitated further therapy. She incurred medical bills exceeding $72,000 and lost wages over $22,000. She still has a large mass on her right thigh and significant scarring. To this day, the plaintiff remains unable to exercise vigorously and has trouble lifting heavy objects when she gardens, both of which were pastimes prior to her injury. Additionally, she has 37% permanent loss of her right leg, walks with a permanent limp, and her doctor told her that she would probably need another hip replacement in the future. As a result, she will continue to experience pain and suffering, likely incur future medical bills of about $30,000, and lose future wages over $8,000. Based upon the record, the trial judge did not commit an unsustainable exercise of discretion in upholding the jury award.

## II. Wheeler's Appeal

On appeal, Wheeler argues that the trial court should have admitted a police report into evidence. Second, he contends that the trial court erred

by allowing the plaintiff to establish a new theory of liability by cross-examining Wheeler's accident reconstruction expert based upon inadmissible deposition testimony. Next, he argues that the trial judge should have instructed the jury concerning RSA 265:21 (1993). Fourth, he argues that the court should have granted his motion to set aside the verdict. Finally, he contends that the jury award was excessive and improperly calculated, and thus the court should have granted a remittitur.

First, Wheeler contends that the trial court erred in refusing to admit a police report under the public record exception to the hearsay rule. We review a trial court's rulings on the admissibility of evidence under an unsustainable exercise of discretion standard, and reverse only if the rulings are clearly untenable or unreasonable to the prejudice of a party's case. *Madeja v. MPB Corp.*, 149 N.H. 371, 390 (2003).

The public record exception, codified in New Hampshire Rule of Evidence 803(8), provides, in relevant part, that the following are not excluded by the hearsay rule:

> Records, reports, statements or data compilations, in any form, of public offices or agencies, setting forth ... (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report ... or (C) in civil actions ... factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

N.H. R. Ev. 803(8).

We have excluded a police report that merely recorded a witness's statement and which lacked characteristics of a factual finding because the officer made no effort to evaluate the witness's credibility and reached no independent conclusions based upon the witness's statements. *See Worster v. Watkins*, 140 N.H. 546, 550-51 (1995). In contrast, here, Officer Locke arrived on the scene after the accident occurred and, in addition to recording witness statements, took measurements, prepared a diagram and made observations. Upon completion of his investigation, the officer concluded that "the driver of the motorcycle made a wrong decision in his attempt to pass the RV." This conclusion amounted to a factual finding as contemplated by Rule 803(8)(C). *See Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 170 (1988); *Baker v. Elcona Homes Corp.*, 588 F.2d 551, 558 (6th Cir. 1978), *cert. denied*, 441 U.S. 933 (1979). Therefore, that portion of the report is admissible under that subsection of the rule, unless the sources of

information or other circumstances indicate lack of trustworthiness. *Rainey*, 488 U.S. at 167-70.

■ In concluding that an officer's findings in a police report were admissible, the Sixth Circuit Court of Appeals applied a four-factor test suggested by the Advisory Committee Notes to determine "whether sources of information or other circumstances indicate lack of trustworthiness." *Baker*, 588 F.2d at 558 (quotation omitted). These factors include consideration of: (1) the timeliness of the investigation; (2) the special skill or experience of the official; (3) the level at which the investigation was conducted; and (4) whether the report was made with any improper motive. *See id.* When faced with this evidentiary question, the trial judge should conduct a hearing on the trustworthiness of the report with these factors as a guide.

■ The trial judge here, however, made no finding that the sources of information or other circumstances indicated lack of trustworthiness. Absent such a finding, we cannot say that the trial judge's decision to exclude the officer's conclusion was a sustainable exercise of discretion. Accordingly, we vacate his ruling and remand for a determination of whether that portion of the report was trustworthy. If so, a new trial at which the officer's conclusion is admitted should be ordered as to Wheeler. Since Speedway did not appeal that evidentiary ruling, the verdict against it stands.

For purposes of judicial efficiency, we address any remaining arguments raised on appeal that may arise should the judge order a new trial. First, Wheeler argues that even if the report is inadmissible, the trial court should have permitted Thomas, the accident reconstruction expert, to testify concerning the contents of the report under New Hampshire Rule of Evidence 705.

■ ■ It is well established that experts may base their opinions on inadmissible hearsay. *Brown v. Bonnin*, 132 N.H. 488, 493 (1989). Indeed, Thomas was permitted to testify concerning Carignan's statements, Wheeler's statements, Neergaard's statements, and Officer Locke's photographs and measurements, which formed the basis of Thomas' opinion. Rule 705 permits inquiry on cross-examination into facts underlying an expert's opinion even if those facts would be otherwise inadmissible. Wheeler seems to argue that because experts may base their opinions upon inadmissible hearsay, Thomas, who reviewed and considered the police report in his analysis of the accident, is necessarily entitled during direct examination to testify concerning the officer's conclusion. We disagree.

Instead, we adopt the position that the trial court here did not err in excluding hearsay evidence offered in support of direct testimony under Rule 705. *See Rose Hall, Ltd. v. Chase Manhattan Overseas Banking*, 576 F. Supp. 107 (D. Del. 1983). As the court in *Rose Hall* noted, "[w]hile an expert witness may base his opinion on such evidence, this does not magically render the hearsay evidence admissible." *Id.* at 158; *see Marsee v. U.S. Tobacco Co.*, 866 F.2d 319, 322-24 (10th Cir. 1989).

Next, Wheeler contends that the trial court should have instructed the jury regarding RSA 265:21. The purpose of jury instructions is to identify issues of material fact, and to inform the jury of the appropriate standards of law by which it is to resolve them. *Nilsson v. Bierman*, 150 N.H. 393, 400 (2003). A jury charge is sufficient as a matter of law if it fairly presents the case to the jury such that no injustice is done to the legal rights of the parties. *Marcotte v. Timberlane/Hampstead School Dist.*, 143 N.H. 331, 347 (1999). In a civil case, we review jury instructions in context. *Id.* at 348. We will reverse if the charge, taken in its entirety, fails to explain adequately the law applicable to the case in such a way that the jury could have been misled. *Id.*; *Nilsson*, 150 N.H. at 400.

The trial court's instructions regarding the turn of the vehicles were as follows:

> RSA 265:20, entitled "Limitations on overtaking on the left," provides, "No vehicle shall be driven to the left side of the center of the roadway when overtaking and passing another vehicle proceeding in the same direction unless authorized by the provisions of this chapter and unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the driving of any vehicle approaching from the opposite direction or any vehicle overtaken. In every event, the overtaking vehicle must return to an authorized lane of travel as soon as practicable, and in the event the passing movement involves the use of a lane authorized for vehicles approaching from the opposite direction before coming within 200 feet of any vehicle, any approaching vehicle." If you find the Defendant Carignan violated this statute and that he operated his vehicle to the left side of the center of the roadway in overtaking and passing another vehicle proceeding in the same direction without authorization under Chapter 265 and without making sure that he could safely overtake and pass Defendant Wheeler's vehicle without interfering with its

operation and that this violation caused or contributed to this accident, then you must find a degree of fault against him. . . .

No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in RSA 265:42, or turn a vehicle to enter a private road or driveway or otherwise to turn a vehicle from a direct course or move right or left upon the roadway and until such movement can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate signal in the manner hereafter provided. A signal of intention to turn right or left when required shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning.

RSA 265:21 provides, in relevant part: "No vehicle shall at any time be driven to the left side of the roadway under the following conditions: . . . (b) When approaching within 100 feet of or traversing any intersection or railroad grade crossing, unless otherwise indicated." RSA 265:45, I (1993) provides, in pertinent part, "No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in RSA 265:42, or turn a vehicle to enter a private road or driveway."

Wheeler contends that because the trial judge instructed the jury regarding RSA 265:45, he should have also instructed the jury concerning RSA 265:21. He also argues that the intersection of Route 106 and Perimeter Road, a private road, constitutes an "intersection" for purposes of RSA 265:21. We disagree.

In matters of statutory interpretation, we are the final arbiter of legislative intent as expressed in the words of the statute considered as a whole. *In the Matter of Watterworth & Watterworth*, 149 N.H. 442, 445 (2003). We first examine the language of the statute and ascribe the plain and ordinary meanings to the words used. *Id.* We do not look beyond the language of the statute to determine legislative intent if the language is clear and unambiguous. *Id.* Furthermore, we interpret statutes in the context of the overall statutory scheme and not in isolation. *Id.*

Interpreting RSA 265:21 in the context of RSA 265:42 and the overall scheme of RSA chapter 265, we conclude that RSA 265:21 is not intended to apply to the junction of a private driveway or entranceway and a highway. Therefore, the junction of Perimeter Road and Route 106 is not an "intersection" as contemplated by the legislature in RSA 265:21. In doing so, we align ourselves with other jurisdictions that have drawn the same conclusion in interpreting similar statutes. *See* Annot., *Traffic Rules—Intersection*, 7 A.L.R. 3D 1204, 1243-51 (1966 & Supp. 2004);

*Edwards v. Twain Lumber Co.*, 267 P.2d 347, 348-49 (Cal. Dist. Ct. App. 1954). Accordingly, we find no error in the court's refusal to instruct the jury concerning RSA 265:21.

*Affirmed in part; vacated in part; and remanded.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.