Belknap
No. 2005-287

MARY CARIGNAN

v.

LESLIE WHEELER & a.

Argued: March 8, 2006
Opinion Issued: May 5, 2006

*Matthew J. Lahey, P.A.*, of Laconia (*Matthew J. Lahey* on the brief and orally), for the plaintiff.

*Bouchard, Kleinman & Wright, P.A.*, of Hampton (*Kenneth G. Bouchard* and *Shenanne R. Tucker* on the brief, and *Mr. Bouchard* orally), for defendant Leslie Wheeler.

HICKS, J. Defendant Leslie Wheeler appeals a decision of the Superior Court (*Smith,* J.) that a police officer's accident report is not trustworthy and hence was properly excluded at trial. We affirm.

This is the second appeal of this case. *See Carignan v. N.H. Int'l Speedway*, 151 N.H. 409 (2004). The facts, including the details of the August 23, 1998 accident from which this case arises, are sufficiently recited in *Carignan. Id.* at 411-12. In *Carignan*, the jury returned a verdict for the plaintiff, Mary Carignan, which was appealed. *Id.* at 412. Wheeler argued, among other things, that the trial court erred by: (1) refusing to admit Officer Locke's police accident report under the hearsay exception in New Hampshire Rule of Evidence Rule 803(8)(C); (2) allowing the plaintiff to establish a new liability theory by cross-examining Wheeler's expert witness based upon inadmissible deposition testimony; (3) failing to grant his motion to set aside the jury verdict; and (4) failing to grant a remittitur because the jury award was excessive and improperly calculated. *Id.* at 415-16.

We determined that the conclusion in Locke's police report that "the driver of the motorcycle made a wrong decision in his attempt to pass the RV" was a factual finding within the meaning of Rule 803(8)(C). *Id.* at 416. Accordingly, we vacated the trial court's ruling excluding the report and remanded the case "for a determination of whether that portion of the report was trustworthy." *Id.* at 417. We also concluded that while Wheeler's expert witness could be asked on cross-examination about otherwise inadmissible facts that underlay or formed the basis of his opinion, the trial court did not err in excluding testimony concerning Locke's conclusion. *Id.* at 418.

On remand, the trial court conducted an evidentiary hearing and found the following facts: On August 23, 1998, Locke, a part-time officer in the Loudon Police Department, arrived at the scene of an accident involving co-defendant Dennis Carignan's motorcycle and Wheeler's recreational vehicle, which was entering co-defendant New Hampshire International Speedway, Inc.'s parking facility. During his subsequent investigation, Locke used triangulation to mark the resting place of the vehicles and gouge marks on the pavement, took measurements, prepared a diagram, and made observations. In addition, he received statements from witnesses upon which he relied in reaching his conclusion of fault. Locke issued his accident report on that same day.

The trial court ruled that the "the police report is not trustworthy and was properly excluded at trial." The court found that "Officer Locke lacked the skill, training, and experience in accident investigation to allow his conclusion of fault to be admitted" and that his investigation was "rather unsophisticated" as his conclusion of fault was based "on witness testimony rather than independently verifiable objective facts."

On appeal, Wheeler argues that the trial court erred by excluding Locke's report and findings. He also argues that the trial court made the

following errors, which were raised, but not addressed, in *Carignan*: (1) allowing the plaintiff to establish a new liability theory by cross-examining Wheeler's expert witness based upon inadmissible deposition testimony; (2) failing to grant his "motion to set aside the jury verdict and for new trial"; (3) allowing the future cost of medical treatment and lost wages without requiring the plaintiff to reduce them to present value; and (4) denying his motion to reconvene the jury when it used a *per diem* formula in calculating its pain and suffering award and impermissibly awarded the plaintiff a credit for attorney's fees in its damages award.

## I. Police Report

We review a trial court's ruling on the admissibility of evidence under an unsustainable exercise of discretion standard, and reverse only if the rulings are clearly untenable or unreasonable to the prejudice of a party's case. *Carignan*, 151 N.H. at 416.

Rule 803(8)(C) provides an exception to the hearsay rule for:

> "[r]ecords, reports, statements or data compilations, in any form, of public offices or agencies, setting forth ... (C) in civil actions ... factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness."

N.H. R. Ev. 803(8)(C).

In *Carignan*, we ruled that Locke's conclusion that "the driver of the motorcycle made a wrong decision in his attempt to pass the RV" was "admissible under that subsection of the rule, unless the sources of information or other circumstances indicate a lack of trustworthiness." *Carignan*, 151 N.H. at 416-17. We suggested that the trial court consider, on remand, the following factors from *Baker v. Elcona Homes Corp.*, 588 F.2d 551, 558 (6th Cir. 1978), *cert. denied*, 441 U.S. 933 (1979): (1) the timeliness of the investigation; (2) the special skill or experience of the official; (3) the level at which the investigation was conducted; and (4) whether the report was made with any improper motive. *Id.* at 417.

Wheeler first contends that, with respect to the second factor, the trial court "inappropriately dwelled on Officer Locke's lack of accident reconstruction" when it is "not necessary" that he be an "accident reconstructionist" or have investigated "a large number of accidents."

The trial court found that Locke was a part-time officer who had previously investigated only five to ten accidents. It also found that Locke's "only training in accident investigation came from a part-time

Academy program and he did not learn any accident reconstruction skills aside from using triangulation." In regard to triangulation, the court noted Locke's testimony that this technique does not "determine what or who caused an accident." As such, the trial court determined that Locke's skill, training, and experience indicated that his conclusion of fault lacked trustworthiness.

■ Although we agree with Wheeler that there is no requirement that a police officer be an expert in accident reconstruction or have investigated a large number of accidents, the trial court could properly consider Locke's limited training and experience in evaluating the trustworthiness of his findings. We see no error in the court's consideration of these facts. *See Baker*, 588 F.2d at 558 (finding that a twenty-eight-year veteran patrolman who "had investigated hundreds or even thousands" of accidents and testified in detail about the vector analysis he performed possessed the requisite skill and experience).

Wheeler also contends that, with respect to the third factor, the trial court erred by finding that Locke relied "solely on witness statements and ignored other parts of his investigation." Specifically, Wheeler contends that Locke made his findings based upon his entire investigation, which, in addition to interviewing witnesses, included taking measurements, making observations, and performing triangulation.

Although the trial court noted that Locke "marked the resting place of vehicles and gouge marks on the pavement using triangulation," it found that "he did not consider this evidence in drawing a conclusion as to fault." Locke testified that he did not perform any accident reconstruction or any skid mark calculations, and that neither his diagram nor his vehicle resting point measurements (triangulation) was used by him to arrive at his conclusion of fault. In addition to admitting that his conclusion was formed from the witness statements he received, Locke explained that without "being an accident reconstructionist," he did not have anything besides the witness statements to use as the basis for his conclusion. The witnesses who provided these statements were two employees of the New Hampshire International Speedway as well as Wheeler and Carignan. When asked if "anybody could take [their] statements and draw a conclusion," Locke testified, "Sure, anybody could."

■ Wheeler does not contest the trial court's findings on the other factors—that the investigation was timely and the report was made without any improper motive. Considering the trial court's findings on all of the factors, we conclude that the trial court's finding, that Locke's report was untrustworthy, is both tenable and reasonable. *See Faries v. Atlas Truck Body Mfg. Co.*, 797 F.2d 619, 623 (8th Cir. 1986) (ruling that a

trooper's accident report containing his conclusion of the accident's cause was inadmissible because there was no method for "checking or corroborating" the report and there was insufficient physical evidence to support his conclusion that was "largely based upon the statements of an interested [witness]"); *cf. Breagy v. Stark*, 138 N.H. 479, 484 (1994) (finding that an officer's opinion testimony concerning the fault or cause of an accident is properly excluded when it would not assist the jury); *Johnston v. Lynch*, 133 N.H. 79, 88 (1990) (same); *Saltzman v. Town of Kingston*, 124 N.H. 515, 524-25 (1984) (same). We thus find no error in the trial court's ruling that "the police report ... was properly excluded at trial."

## II. New Liability Theory

Wheeler next argues that the trial court erred by allowing the plaintiff to establish a new liability theory (that Wheeler "did not make a normal left turn, but rather drifted left on a direct angle well before the turn, and entered the motorcycle's lane causing the collision") during cross-examination of Wheeler's expert witness using the inadmissible deposition testimony of Carignan.

In *Russell v. Boston & Maine Railroad*, 83 N.H. 246, 252 (1928), we held that a plaintiff was not entitled to present to a jury a new liability theory, which was suggested "[j]ust before the close of evidence, in cross-examination of the defendant's expert," when it "constituted a radical departure from the theory upon which the whole trial had proceeded up to that time" and where "there was a total lack of evidence to sustain it." Citing *Russell*, Wheeler appears to argue that the trial court erred in allowing this new liability theory to go to the jury essentially because it "was not presented in the Plaintiff's pretrial statement, opening statement, or anywhere in the Plaintiff's case in chief," but rather was "spontaneously developed" during the cross-examination of Wheeler's expert witness. The record reflects otherwise.

Unlike in *Russell*, plaintiff's counsel here referenced evidence concerning the "clipped corner" manner of Wheeler's turn during his opening statement. Subsequently, the plaintiff and Carignan described Wheeler's turn in their direct examination both as a normal and as a gradual turn. Therefore, there was no "radical departure" within the meaning of *Russell. Id.* at 252 (rejecting new theory of cause of fire interjected at conclusion of trial without foundation).

■ Furthermore, even though large portions of Carignan's deposition were not admitted into evidence, we reiterate our statement from *Carignan* that New Hampshire Rule of Evidence 705 "permits inquiry on

cross-examination into facts underlying an expert's opinion even if those facts would be otherwise inadmissible." *Carignan,* 151 N.H. at 417. Plaintiff's counsel was allowed to cross-examine Wheeler's expert witness about statements in Carignan's deposition because he testified that he relied upon this deposition in forming his opinions. In addition, the trial court gave a limiting instruction to the jury that the deposition evidence was relevant only for what Wheeler's expert considered in forming his opinions.

We therefore conclude that the trial court did not err in allowing the plaintiff's case as presented to go to the jury for consideration.

*III. Reconvening the Jury*

Wheeler also argues that the trial court erred in denying his motion to reconvene the jury when its verdict was based upon "impermissible speculation as to the Plaintiff's attorneys' fees and expenses" and an "impermissible *per diem*" based formula in order to make sure that the plaintiff received "$20,000 per year above medical costs, lawyer's fees and any other expenses."

Wheeler's motion was accompanied by an affidavit of his attorney, Kenneth Bouchard. Attorney Bouchard's affidavit detailed how, upon receiving a response to a juror questionnaire, he called the juror and thereby received the information that formed the basis for the motion. The trial court denied the motion.

We review the trial court's decision under an unsustainable exercise of discretion standard, and reverse only if the rulings are clearly untenable or unreasonable to the prejudice of a party's case. *State v. Low,* 138 N.H. 86, 88 (1993); *see State v. Lambert,* 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard). Whether or not to reconvene the jury based upon an attorney's affidavit is a matter within the sound discretion of the trial court. *Drop Anchor Realty Trust v. Hartford Fire Ins. Co.,* 126 N.H. 674, 683 (1985). Based upon the record before us, the trial court's denial of the defendant's motion is neither untenable nor unreasonable.

*IV. Remaining Arguments*

Wheeler asserts in his remaining arguments that the trial court erred by failing to grant his "motion to set aside the jury verdict and for new trial," and by allowing the future cost of medical treatment and lost wages without requiring the plaintiff to reduce them to present value. We

conclude that these arguments lack merit and warrant no further discussion. *See Vogel v. Vogel,* 137 N.H. 321, 322 (1993).

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.